# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

|  |  |  |
|---|---|---|
| MARIO A. GUARDADO AND MARIA EVELIA GUARDADO, | § § § § | |
| Plaintiffs, | § § § § | |
| v. | § § § | CIVIL ACTION NO. 3:14-CV-02641-P |
| STATE FARM LLOYDS AND DION MCKINLEY, | § § § § | |
| Defendants. | § § § | |

## BRIEF IN SUPPORT OF RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL AND MOTION TO STRIKE/OVERRULE

# TABLE OF CONTENTS

Table of Contents ................................................................................................................. ii

Index of Authorities ........................................................................................................... iii

I.      Introduction ................................................................................................................1

II.     Arguments and Authorities .......................................................................................2

        A.      Legal Standard ...............................................................................................2

        B.      State Farm Properly Objected to Plaintiffs' Overbroad Discovery Requests ..........4

                1.      RFP 4: Training, Instructional, and Educational Materials .........................7

                2.      RFP 1: Underwriting Files .......................................................................10

                3.      RFP 5: Personnel Files ............................................................................12

                4.      RFP 7: Pre-anticipation of Litigation Reserve(s) .....................................13

                5.      RFP 12: Indemnity Agreements ...............................................................13

        C.      State Farm's Proposal to Produce in Reasonably Usable Formats Complies
                with the Federal Rules of Civil Procedure ....................................................14

                1.      Producing Reasonably Usable ESI in Compliance with its
                        Obligations under Fed. R. Civ. P. 34(b) ...............................................14

                2.      Plaintiffs' Request for Irrelevant Metadata Is Facially Overbroad ...........18

                3.      Plaintiffs' Demand for a Production Protocol is Disproportionate
                        and Unwarranted. ...................................................................................20

        D.      Privilege Log ................................................................................................24

Prayer ...................................................................................................................................25

Certificate of Service ...........................................................................................................26

# INDEX OF AUTHORITIES

## Cases

*Aguilar v. ICE Division of United States Deptartment of Homeland Security*,
   255 F.R.D. 350 (S.D.N.Y. 2008) ...................................................................... 19, 20

*Ajaxo Inc. v. Bank of America Technology and Operations, Inc.*,
   No. CIV-S-07-0945, 2008 WL 5101451 (E.D. Cal. Dec. 2, 2008) ......................... 17

*Allstate Insurance Co. v. Plambeck, D.C.*,
   No. 3-08-CV-0388-M, 2008 WL 5411435 (N.D. Tex. Dec. 29, 2008)...................... 4

*American Society For Prevention of Cruelty To Animals v. Ringling Brothers & Barnum &
   Bailey Circus*,
   233 F.R.D. 209 (D.D.C. 2006)............................................................................ 25

*Batson v. Neal Spelce Associates, Inc.*,
   112 F.R.D. 632 (W.D. Tex. 1986) .................................................................... 3, 19

*Bettis v. Hall*,
   No. 10-2457-JAR, 2015 WL 1268014 (D. Kan. Mar. 19, 2015).............................. 4

*Covad Communications Co. v. Revonet, Inc.*,
   267 F.R.D. 14 (D.D.C. 2010)......................................................................... 19, 20

*Crawford-El v. Britton*,
   523 U.S. 574 (1998)............................................................................................ 3

*Crosby v. Louisiana Health Service & Indemnity Co.*,
   647 F.3d 258 (5th Cir. 2011) ............................................................................... 7

*Ford Motor Co. v. Edgewood Properties, Inc.*,
   257 F.R.D. 418 (D.N.J. 2009).............................................................................. 24

*Grand River Enterprises Six Nations, Ltd. v. King*,
   No. 02 CIV.5068(JFK), 2009 WL 63461 (S.D.N.Y. Jan. 12, 2009) ....................... 25

*Hill v. Auto Owners Insurance Co.*,
   No. 14-CV-05037-KES, 2015 WL 1280016 (D.S.D. Mar. 20, 2015)...................... 4

*In re Fire Insurance Exchange*,
   No. 09-04-301-CV, 2004 WL 2113037 (Tex. App.—Beaumont Sept. 23, 2004, no pet.) (per
   curiam) ............................................................................................................... 9

*In re GMAC Direct Insurance Co.*,
   No. 09-10-00493-CV, 2010 WL 5550672 (Tex. App.—Beaumont Dec. 30, 2010, no pet.) (per
   curiam) (mem. op.) ............................................................................................. 7

*In re National Lloyds Insurance* Company,
449 S.W.3d 486 (Tex. 2014) (per curiam) ........................................................ 5, 7, 8

*In re Priceline.com Inc. Securities Litigation,*
233 F.R.D. 88 (D. Conn. 2005) ............................................................ 16

*In re Sears, Roebuck and Co.,*
146 S.W.3d 328 (Tex. App. – Beaumont 2004, no pet.) (per curiam) ...................... 9

*Johnson v. Geico General Insurance Co.,*
No. 07-80310-CIV, 2007 WL 3344253 (S.D. Fla. Nov. 7, 2007) .......................... 11

*Kentucky Speedway, LLC v. National Association of Stock Car Auto Racing, Inc.,*
No. Civ. A. 05-138-WOB, 2006 WL 5097354 (E.D. Ky. Dec. 18, 2006) .............. 17

*Mae v. Hurst,*
613 F. App'x 314 (5th Cir. 2015) .......................................................... 2

*McLeod, Alexander, Powel & Apffel, P.C. v. Quarles,*
894 F.2d 1482 (5th Cir. 1990) ............................................................ 2

*Milinazzo v. State Farm Insurance Co.,*
247 F.R.D. 691 (S.D. Fla. 2007) ........................................................ 11

*Mohawk Indus., Inc. v. Carpenter,*
558 U.S. 100 (2009) ...................................................................... 25

*Ojeda-Sanchez v. Bland Farms, LLC,*
No. CV608-096, 2009 WL 2365976 (S.D. Ga. July 31, 2009) ......................... 17

*Presbyterian Manors, Inc. v. Simplex Grinnell, LP,*
No. 09-2656-KHV, 2010 WL 3880027 (D. Kan. Sept. 28, 2010) ........................ 4

*Race Tires America, Inc. v. Hoosier Racing Tire Corp.,*
674 F.3d 158 (3d Cir. 2012) ............................................................... 16

*S2 Automation LLC v. Micron Technology, Inc.,*
No. CIV 11-0884, 2012 WL 3656454 (D.N.M. Aug. 9, 2012) ...................... 16, 17

*Seabron v. American Family Mutual Insurance Co.,*
862 F. Supp. 2d 1149 (D. Colo. 2012) ............................................... 16, 17

*State Farm Mutual Automobile Insurance Co. v. Engelke,*
824 S.W.2d 747 (Tex. App.—Houston [1st Dist.] 1992, no writ) ..................... 10

*United States v. Philip Morris Inc.,*
314 F.3d 612 (D.C. Cir. 2003) ........................................................... 25

*Wyeth v. Impax Laboratories, Inc.*,
  248 F.R.D. 169(D. Del. 2006) ............................................................................... 16

**Statutes**

Tex. Ins. Code § 4101.051 ....................................................................................... 7

Tex. Ins. Code § 4101.053 ....................................................................................... 8

Tex. Ins. Code § 4101.054 ....................................................................................... 8

**Other Authorities**

June 2014 Advisory Committee Report ..................................................................... 2

The Sedona Conference Commentary on Ethics & Metadata, August 2013 .............. 19

The Sedona Conference Principles, Best Practices Recommendations & Principles for
  Addressing Document Production, 2d. Ed., July 2007 ............................................ 19

**Rules**

FED. R. CIV. P. 26(a)(1)(A)(iv) ................................................................................. 13

FED. R. CIV. P. 26(b)(1). ........................................................................................... 2

FED. R. CIV. P. 26(b)(2)(C)(iii) ...................................................................... 3, 6, 20

FED. R. CIV. P. 26(c)(1)(D) ....................................................................................... 3

FED. R. CIV. P. 34(b)(1)(C). ..................................................................................... 15

FED. R. CIV. P. 34(b)(2)(D). ..................................................................................... 15

FED. R. CIV. P. 34(b)(2)(E)(ii). ................................................................................ 15

**TO THE HONORABLE JUDGE OF THIS COURT:**

COMES NOW, Defendant State Farm Lloyds ("State Farm") and files this Brief in Support of State Farm's Response in Opposition to Plaintiffs' Motion to Compel and Motion to Strike/Overrule:

## I.      INTRODUCTION

1.      This first-party insurance dispute concerns whether Defendant State Farm Lloyds ("State Farm") adequately compensated Plaintiffs for certain hail and/or wind damages to their property that allegedly occurred in Dallas County on or about June 13, 2012.[1]  Based upon Plaintiffs' claims, discovery should focus on whether State Farm paid Plaintiffs' insurance claim pursuant to the terms and conditions of their insurance policy.  Despite this fact, Plaintiffs have served discovery requests[2] that exceed the scope of discovery permitted under Federal Rule of Civil Procedure 26, and a Production Protocol[3] that ignores the plain language of Rule 34 (which allows a producing party to produce in "reasonably usable" formats of its choice).

2.      Now, Plaintiffs demand that the Court generally overrule *all* of State Farm's objections to *all* of Plaintiffs' discovery requests, compel responses to five specific discovery requests, and require compliance with Plaintiffs' proposed Production Protocol.  In support, Plaintiffs cite a decision from this District, claiming that Magistrate Judge Ramirez overruled State Farm's objections and ordered production in response to two "identical" requests.[4] However, in that case Plaintiffs' counsel withdrew a number of the requests at issue here, withdrew their Production Protocol, and only submitted *two significantly narrowed* discovery requests for consideration, which were hardly "identical" to those here.[5]  Further, Plaintiffs

---

[1] *See* Pet., Dkt. 1-5 ¶¶ 12-15.

[2] Pls.' Appendix, Dkt. 41-1, Ex. A thereto, at 009-014.

[3] *Id.* at 003-007.

[4] Pls.' Br., Dkt. 42, at 11-12.

[5] *See Cano et al. v. State Farm Lloyds et al.*, 3:14-cv-02720, Dkt. 44 (N.D. Tex. May 15, 2015) (App001-010).

neglect to mention that their proposed Production Protocol and a number of their discovery requests are (actually) identical to those that have been repeatedly rejected by the Southern District of Texas in several other essentially identical insurance actions.[6]   Accordingly, State Farm requests that the Court deny Plaintiffs' Motion, limit discovery to information relevant to the claims and defenses *in this case*, and allow State Farm to produce in "reasonably usable" formats rather than being saddled with the unnecessary and onerous provisions of Plaintiffs' intrusive "Production Protocol."

## II.    ARGUMENTS AND AUTHORITIES

### A.    Legal Standard

3.    Courts in the Fifth Circuit have long recognized that discovery must be reasonably limited.  Parties may generally obtain discovery so long as it is "relevant to any party's claim or defense. . . ."[7]  Plaintiffs' assertion, that they are entitled to discovery that "appears reasonably calculated to lead to the discovery of admissible evidence," is specious.[8] Under the Rules, discovery is focused on the information that is relevant and proportional to the claims and defenses in the matter.  Plaintiffs cannot compel more.

---

[6] *See, Dizdar et al. v. State Farm Lloyds et al,* 7:14-cv-523, Dkt. 20 (S.D. Tex. Jan. 7, 2015) (Alvarez, J.) (granting protective order) ("*Dizdar I*," App011-039); *Dizdar et al. v. State Farm Lloyds et al.,* 7:14-cv-402, Dkt. 20 (S.D. Tex. Jan. 21, 2015) (Alvarez, J.) (granting protective order); Order, Dkt. 18, *Dizdar et al. v. State Farm Lloyds et al.,* 7:14-cv-447, Dkt. 18 (S.D. Tex. Jan. 21, 2015) (granting protective order) (Alvarez, J.).

[7] FED. R. CIV. P. 26(b)(1).

[8] Although courts—including the Fifth Circuit—have suggested that the scope of discovery extended to information that "appears reasonably calculated to lead to the discovery of admissible evidence," *see, e.g., Mae v. Hurst,* 613 F. App'x 314, 316-17 (5th Cir. 2015); *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1484 (5th Cir. 1990), the Advisory Committee for the Federal Rules of Civil Procedure has advised that the "reasonably calculated" language was never intended to define the scope of discovery.  *See* June 2014 Advisory Committee Report, at Appendix B-44 attached to the September 2014 Standing Committee Report, *available at* http://www.uscourts.gov/rules-policies/archives/committee-reports/reports-judicial-conference-september-2014.  Instead, that language was included in Rule 26 to clarify that relevant information is discoverable even if it is not admissible, for example, because of hearsay.  However, because the phrase "reasonably calculated" "continued to create problems," it will be struck from Rule 26(b)(1) following the December 1, 2015 amendments to the Rules. *Id.*

---

4.      This focus is consistent with the ongoing concern expressed by the courts that parties must be protected from excessive and disproportionate discovery:

> [T]he spirit of the rules is violated when advocates attempt to use discovery tools as tactical weapons rather than to expose the facts and illuminate the issues by overuse of discovery or unnecessary use of defensive weapons or evasive responses.  All of this results in excessively costly and time-consuming activities that are disproportionate to the nature of the case, the amount involved, or the issues or values at stake.[9]

As a result, the Federal Rules of Civil Procedure impose limits on discovery methods that may be employed, and courts are encouraged to limit discovery if "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues."[10]

5.      As the Supreme Court of the United States has recognized, Federal Rule of Civil Procedure 26's "provisions create many options for the district judge," including the ability to "set the timing and sequence of discovery"[11] and to "forbid[ ] inquiry into certain matters, or limit[ ] the scope of disclosure or discovery to certain matters."[12]  Plaintiffs' Motion alleges that State Farm's objections are perfunctory and unjustified, but Plaintiffs have failed to provide any specific reason that the information that they seek to compel is relevant to the claims and defenses of the action.  It is well-settled under Rule 37(a)(3) that if a party's "discovery requests appear facially objectionable in that they are overly broad or seek information that does not appear relevant, the burden is on the movant to demonstrate how the requests are not

---

[9] *Batson v. Neal Spelce Assocs., Inc.*, 112 F.R.D. 632, 642 (W.D. Tex. 1986) (quoting the drafters' comments to the 1983 amendments to Rule 26).

[10] FED. R. CIV. P. 26(b)(2)(C)(iii).

[11] *See Crawford-El v. Britton*, 523 U.S. 574, 599 (1998).

[12] FED. R. CIV. P. 26(c)(1)(D).

objectionable."[13]  "Mere speculation that information might be useful will not suffice; litigants seeking to compel discovery must describe with a reasonable degree of specificity, the information they hope to obtain and its importance to their case."[14]  Only after the moving party has established that the discovery sought appears to be relevant and designed to further the resolution of the action, does the burden shift to the responding party to establish that the objections stated are proper and the production should not be permitted.[15]

**B.     State Farm Properly Objected to Plaintiffs' Overbroad Discovery Requests**

6.     A number of Plaintiffs' requests are irrelevant, overbroad, and are not reasonably tailored to the claims and defenses in this litigation.  Plaintiffs demand information regarding other claims, properties, and insureds; institutional information such as training materials and indemnity agreements; and irrelevant information such as employee personnel files.   The Southern District of Texas and the Texas Supreme Court have repeatedly rejected such overbroad discovery in similar insurance disputes, and this Court should do the same here.

7.     For example, in *Dizdar I*, the Southern District of Texas granted State Farm protection from a number of overbroad, irrelevant discovery requests.  As the Court explained in rejecting Plaintiffs' proffered rationale for their overbroad requests—their unsupported theory that State Farm engaged in a conspiracy to undervalue claims—"Plaintiffs are not permitted to abuse the discovery process to hunt for evidence of a conspiracy theory that goes well beyond the claims at issue in this case."[16]

---

[13] *Bettis v. Hall*, No. 10-2457-JAR, 2015 WL 1268014, at *1 (D. Kan. Mar. 19, 2015). *Cf. Presbyterian Manors, Inc. v. Simplex Grinnell, LP*, No. 09-2656-KHV, 2010 WL 3880027, at *7 (D. Kan. Sept. 28, 2010) ("when relevancy is not readily apparent, the proponent has the burden of showing the relevancy of the discovery request").

[14] *Hill v. Auto Owners Insurance Co.*, No. 14-CV-05037-KES, 2015 WL 1280016, at *7 (D.S.D. Mar. 20, 2015).

[15] *See Allstate Ins. Co. v. Plambeck, D.C.*, No. 3-08-CV-0388-M, 2008 WL 5411435, at *1 (N.D. Tex. Dec. 29, 2008) (once the party seeking discovery meets the "threshold burden" of showing that the "documents requested are within the scope of permissible discovery, the burden shifts to [the opponent of discovery] to show why discovery should not be permitted.")

[16] *Dizdar I*, App022.

8.    The Court further concluded that Plaintiffs could not "fish into unrelated third-party matters because that information cannot reasonably support whether Plaintiffs' claims were undervalued.  Even if Plaintiffs were able to establish an ostensible pattern or practice of undervaluation of claims in the Rio Grande Valley, it would not prove that this individual claim was undervalued."[17]

9.    Similarly, in *In re National Lloyds Insurance Company*, a case described by the Southern District of Texas as "strikingly similar" to *Dizdar I*,[18] the Texas Supreme Court held that the trial court abused its discretion when it ordered an insurer to produce the same kind of expansive discovery Plaintiffs seek here.[19]  The trial court had ordered the production of claim files of other insureds' homes that were adjusted by the same adjusters who handled the plaintiff's claims, limited to claims arising out of the same storms that damaged the plaintiff's house and from the same geographical area.  Even with these limitations, however, the Texas Supreme Court held that the claim files of other insureds were not discoverable.  The court "fail[ed] to see how National Lloyds' overpayment, underpayment, or proper payment of the claims of unrelated third parties is probative of its conduct with respect to [plaintiff's] undervaluation of claims at issue in this case."[20]

10.    Although Plaintiffs may argue the evidence of State Farm's handling of other claims goes to a general business practice, routine, or habit of State Farm, they cannot demonstrate how State Farm's alleged "habit" makes it more or less likely that (a) Plaintiffs' property sustained damage; (b) the alleged damage was caused by a covered peril; or (c) State Farm committed bad faith.  Even if an insurer is found to have acted in bad faith in one case, it does not follow that it did so in any other case.  In each case, a plaintiff must show the insurer's

---

[17] *Id.* at 012.

[18] *Id.*

[19] *In re Nat'l Lloyds Ins. Co.*, 449 S.W.3d 486 (Tex. 2014) (per curiam).

[20] *Id.* at 489.

conduct as to that particular plaintiff was improper.   As the Texas Supreme Court explained, "[s]couring [other] claim files in hopes of finding similarly situated claimants whose claims were evaluated differently from [plaintiff's] is at best an impermissible fishing expedition" and is not "reasonably calculated to lead to the discovery of" relevant evidence.[21]

11.     Plaintiffs' irrelevant and overly broad discovery is also particularly unreasonable in this case given the relatively low amount in dispute.  Plaintiffs have designated as an expert witness Kevin Mohr, a public adjuster who produced as his expert report an estimate of the alleged damages to Plaintiffs' property.[22]  The total amount of Mohr's estimate is $30,362.63.[23] At the time the claim was originally adjusted, State Farm's claim representative, Dion McKinley, generated an estimate of the damage to the property in the amount of $2,699.35.[24]   In other words, the total amount of the contract dispute in this case is only $27,663.28.   Plaintiffs' requests thus violate the principle of proportionality set out in Federal Rule of Civil Procedure 26(b)(2)(C)(iii) and are inappropriate given the "needs of the case" and "the amount in controversy."[25]

12.     In light of the above, discovery here should be limited to and address only whether Plaintiffs' property sustained covered damage and, if so, whether the claim was timely and properly adjusted and paid by State Farm.  Plaintiffs' request for discovery beyond what is required to answer these questions is nothing more than an attempt by Plaintiffs "to engage in an

---

[21] *Id.* (internal quotation marks omitted).

[22] Estimate prepared by Kevin Mohr dated February 1, 2015, App106-123.

[23] App120.

[24] State Farm Estimate dated August 9, 2012, App127.

[25] Notably, Plaintiffs here are represented by the same counsel as numerous other plaintiffs with lawsuits pending both in this district and in state court involving individual wind/hail insurance claims.  Their counsel routinely makes the same broad, generic allegations of bad faith and seeks the same discovery in all of his cases, regardless of the specific facts of each case.  Such boilerplate allegations and template discovery requests, easily produced with only a few computer key strokes, are inappropriate.

unwieldy, burdensome, and speculative fishing expedition."[26]   Accordingly, and as set forth below, the Court should deny Plaintiffs' Motion to compel further discovery responses.

### 1.   RFP 4: Training, Instructional, and Educational Materials

13.   Plaintiffs demand "[a]ll documents used to instruct, advise, guide, inform, educate, or assist provided to any person handling the claim made the basis of this Lawsuit that related to the adjustment of this type of claim, i.e., hail property damage."[27]   According to Plaintiffs, this request includes, but is not limited to, the following materials: Catastrophe Wind/Hail Study Guide, Fire IA Training Estimatics Study Guide, Power Point Presentation on the handling of claims for hail damage, Hail Training Module 1- General Overview of handling of a hail claim, Catastrophe Basic Estimating Proficiency Exam, and HO Policy Exam with Answers.[28]   However, there are no *factually supported* allegations that the adjusters were not trained properly by State Farm, that the adjusters did not follow the training they were given, or even that they were trained with any of the requested materials.   Accordingly, these materials are irrelevant and the request is overbroad.   As one Texas Court of Appeals said, overbroad requests for training materials are "precisely the sort of fishing expedition that harvests vast amounts of tenuous information along with the pertinent information that was used in adjusting [Plaintiffs'] claim."[29]

14.   Moreover, because insurance claims adjusters are licensed in the State of Texas,[30] any training materials are irrelevant.   To be a licensed claims adjuster in Texas, a person must take and pass an examination testing the qualifications, competency, duties, and responsibilities

---

[26] *Crosby v. Louisiana Health Serv. & Indem. Co.*, 647 F.3d 258, 264 (5th Cir. 2011) (internal quotes omitted).

[27] Request for Production No. 4, Pls.' Appendix, Dkt. 41-1, Ex. A thereto at 12.

[28] Pls.' Br., Dkt. 42, ¶ 25.

[29] *In re GMAC Direct Ins. Co.*, No. 09-10-00493-CV, 2010 WL 5550672 at *1 (Tex. App.—Beaumont Dec. 30, 2010, no pet.) (per curiam) (mem. op.); see also *Nat'l Lloyds*, 449 S.W.3d at 489-90.

[30] *See* Tex. Ins. Code § 4101.051.

of an adjuster.[31]  The State of Texas only licenses adjusters who have established that they have sufficient experience or training with regard to claims handling.[32]  Therefore, the amount, if any, of additional training given to insurance claims adjusters by State Farm is irrelevant and the information is not reasonably calculated to lead to the discovery of admissible evidence.

15.    But even if training materials and claims handling guidelines were relevant as a general matter, the only materials that would be potentially relevant here are those pertinent to the June 13, 2012 storm at issue that were used by or available to Dion McKinley.[33]  Those documents speak for themselves.  Any materials that predate the storm at issue, or relate to other areas of the state that were not impacted by the storm at issue, are of no consequence.

16.    In addition to the problems of over-breadth and irrelevance noted above, Request for Production No. 4 is also unduly burdensome.  While Plaintiffs assert that State Farm would not be unduly burdened by the production of certain documents which State Farm has already produced in other litigation, this overbroad request calls for far more than the documents Plaintiffs specifically identify—as Plaintiffs themselves concede.[34]  Request for Production No. 4 essentially demands every claim handling policy/procedure document related to property damage claims in Texas, which would be extremely onerous to have to gather and produce. And the request could call for more than centrally-maintained, formal training materials; it could include every document that might conceivably be considered to constitute a policy, procedure, manual, practice, rule, custom, communication, or other document that relates to the handling of wind or hail claims.  As a result, Plaintiffs' request potentially requires a search for and production of, for example, all e-mails exchanged between hundreds of State Farm employees or

---

[31] *See* Tex. Ins. Code § 4101.054.

[32] *See* Tex. Ins. Code § 4101.053.

[33] *See Nat'l Lloyds*, 449 S.W.3d at 489.

[34] *See* Pls.' Br., Dkt. 42 ¶ 25 (the training materials Plaintiffs seek "include but are not limited to" specific documents.)

associates located throughout the United States, at any point during the past decade or more.[35] Such a request is not even remotely, much less reasonably, tailored to the issues in this suit.

17.    Requests for claims handling and training materials similar to those propounded in this case have been rejected by other courts, and should be rejected here.  For example, in *In re Fire Insurance Exchange*, a first-party homeowner's insurance dispute, the Texas appellate court held that similar training requests which "cover all of Texas" were not narrowly tailored the claim at issue.[36]  Notably, Plaintiffs' counsel in this matter was also counsel in *In re Fire Insurance Exchange*.

18.    Although Plaintiffs claim that Magistrate Judge Ramirez "overruled Defendant's objections and ordered Defendant to produce documents responsive to an identical request,"[37] that is not a complete statement of what occurred in the case to which Plaintiffs refer.  In *Cano v. State Farm Lloyds*, No. 3:14-cv-02720-L (N.D. Tex.), the plaintiffs, represented by Plaintiffs' counsel here, filed a similar Motion to Compel and Motion to Strike, demanding that all of State Farm's objections be overruled, that State Farm produce discovery in response to a number of requests, and that the Court require compliance with their proposed Production Protocol.[38] However, following an order directing a face-to-face conference,[39] Plaintiffs withdrew all of their demands except for two requests for production, which they significantly narrowed.[40] Plaintiffs narrowed Request for Production No. 4 from seeking "all documents," provided to

---

[35] Because Request for Production No. 4 is ambiguous and facially overbroad, a more precise computation of the burden required for compliance is unnecessary.  *See In re Sears, Roebuck and Co.*, 146 S.W.3d 328, 333 (Tex. App. – Beaumont 2004, no pet.) (per curiam) ("Until the requests are narrowly tailored . . . the viability of any objection based on privilege, confidentiality, or burden cannot be determined.")  State Farm reserves the right to submit evidentiary support for the burdensomeness of this request if Plaintiffs attempt to narrow its scope.

[36] No. 09-04-301-CV, 2004 WL 2113037, at *2 (Tex. App.—Beaumont Sept. 23, 2004, no pet.) (per curiam).

[37] Pls.' Br., Dkt. 42 ¶ 25.

[38] *See Cano et al. v. State Farm Lloyds et al.*, 3:14-cv-02720-L, Dkt. 39 (N.D. Tex. May 4, 2015).

[39] *Cano et al. v. State Farm Lloyds et al.*, 3:14-cv-02720-L, Dkt. 41 (N.D. Tex. May 7, 2015).

[40] App003-008.

"any person handling the claim," for all time, to only seeking course materials from courses identified in one adjuster's training tracker for a period of one year.[41]   It was this narrowed request that Magistrate Judge Ramirez approved in a brief order, without opinion.   Notably, none of the materials listed in paragraph 25 of Plaintiffs' Motion, which Plaintiffs claim "are responsive to this Request for Production," were produced in the *Cano* case.   Although State Farm respectfully disagrees with the decision to compel even limited training discovery, it is disingenuous to suggest that Magistrate Judge Ramirez's decision would authorize the discovery requested here.

19.     The only other Texas case that Plaintiffs cite, *State Farm Mut. Auto. Ins. Co. v. Engelke*, 824 S.W.2d 747 (Tex. App.—Houston [1st Dist.] 1992, no writ), is readily distinguishable.   The *Engelke* decision merely found no abuse of discretion when the trial court ordered compliance with one production request that was limited by agreement to materials in effect on one specific date when a medical examination was conducted.   *Id.* at 753.   Here, Plaintiffs have propounded an unlimited request that seeks information completely unrelated to the claim at issue.   Accordingly, Plaintiffs' request exceeds the scope of permissible discovery.

### 2.     RFP 1: Underwriting Files

20.     Plaintiffs demand "underwriting files and documents relating to the underwriting for all insurance policies for the Property identified in the Petition.   This request is limited to the past 5 years.   To the extent Defendant contends that the underwriting file or documents older than 5 years impact the damages or coverage, produce that underwriting file or document."[42]   However, Plaintiffs have not offered any explanation for why such documents are relevant beyond the purely conclusory statement that "[t]his request for production is relevant to the subject matter making the basis of this lawsuit."[43]   It is not.

---

[41] *Id.* at 4.

[42] Request for Production No. 1, Pls.' Appendix, Dkt. 41-1, Ex. A thereto at 12.

[43] Pls.' Br., Dkt. 42, at 12.

21.     Plaintiffs' request is overbroad because it is not limited to the policy at issue and it demands irrelevant materials.   Underwriting relates to an insurer's decision to provide insurance, including issues such as risk assessment and premium setting, but there are no allegations questioning the validity of the issuance of the policy or the meaning of the policy's terms.   It is undisputed that Plaintiffs' policy was underwritten and in force at the time of the loss.   Thus, underwriting materials are generally irrelevant to the claims at issue.   For example, in *Milinazzo v. State Farm Insurance Co.*, the court denied discovery of underwriting files, noting that the plaintiff had not alleged an ambiguity in the contract language.[44]   The court further explained that "[a]n insurer's decision to issue insurance is distinct from an insurer's decision to deny a claim."[45]   The same result is warranted here.   To the extent Plaintiffs desire a specific subset of underwriting materials because they believe them to be relevant to issues in this case, their request should be narrowly tailored to encompass just those materials.

22.     Although Plaintiffs claim that Magistrate Judge Ramirez "overruled Defendant's objections and ordered Defendant to produce documents responsive to an identical request,"[46] that is again not entirely accurate.   As noted in Section II.B.1, *supra*, the plaintiffs in that case *significantly narrowed* two of the discovery requests, which they submitted for the Court's consideration.   Plaintiffs narrowed Request for Production No. 1 from seeking documents beyond the past five years to a period of less than two years.[47]   It was this narrowed request that Magistrate Judge Ramirez approved in a brief order, without opinion.   Although State Farm respectfully disagrees with the decision to compel even limited underwriting discovery, it is disingenuous to suggest that Magistrate Judge Ramirez's decision would authorize the discovery

---

[44] 247 F.R.D. 691, 702 (S.D. Fla. 2007).

[45] *Id.   See also Johnson v. Geico Gen. Ins. Co.*, No. 07-80310-CIV, 2007 WL 3344253, at *3 (S.D. Fla. Nov. 7, 2007), *aff'd,* 318 Fed. App'x 847 (11th Cir. 2009) (denying underwriting discovery in bad faith insurance action, noting that "the underwriting file itself does not contain relevant information.")

[46] Pls.' Br., Dkt. 42, at 12.

[47] App003.

requested here.

### 3.      RFP 5: Personnel Files

23.      Plaintiffs demand:

A complete copy the [sic] personnel file related to performance (excluding medical and retirement information) for all people and their managers and/or supervisors who directly handled the claim made the basis of this Lawsuit, including all documents relating to applications for employment, former and current resumes, last known address, job title, job descriptions, reviews, evaluations, and all drafts or versions of requested documents. This request is limited to the past 5 years.[48]

24.      This request seeks information irrelevant to Plaintiffs' claims.  Plaintiffs have not pled any facts in their Petition to support a claim that an adjuster, manager, or supervisor acted in contravention of his or her proper duties, or that the dispute between the parties would somehow be more easily or readily resolved if Plaintiffs were allowed to subject the adjusters, managers, or supervisors to such an unreasonable invasion of their personal and privacy rights.

25.      Moreover, Plaintiffs' claims against State Farm are based on alleged Texas Insurance Code violations, breach of contract, and breach of the duty of good faith and fair dealing.  None of these claims raise as an issue the adjusters' or their managers' and supervisors' past histories as employees, especially when considering the breadth of this request.  Notably, the Southern District of Texas rejected an identical request.  In *Dizdar I*, the court explained that "the ostensibly appropriate grounds for this request – that [the adjuster] was improperly trained and failed to perform a satisfactory evaluation – does not support the overly broad nature of the request."[49]  According to the court, it was unclear how documents, including *drafts*, relating to employment applications, former and current resumes, last known addresses, and job titles would shed light on the defendant adjuster's "alleged failures that Plaintiffs contend underpin deceptive insurance practices."[50]

---

[48] *See* Request for Production No. 5, Pls.' Appendix, Dkt. 41-1, Ex. A thereto at 12.

[49] *Dizdar I*, App026.

[50] *Id.*

### 4.    RFP 7: Pre-anticipation of Litigation Reserve(s)

26.    Plaintiffs demand "[a]ll documents reflecting the pre-anticipation of litigation reserve(s) set on the claim made the basis of this Lawsuit, including any changes to the reserve(s) along with any supporting documentation."[51]  However, any pre-litigation reserves set by State Farm are wholly irrelevant to the question of whether State Farm properly adjusted Plaintiffs' insurance claim.  As the Southern District of Texas explained in sustaining State Farm's objection to this request, "Plaintiffs do not, and in fact cannot, assert a causal connection between State Farm paying less than the maximum amount set aside and State Farm acting in bad faith.  In fact, the Court can conjecture many scenarios where paying a fraction of the initial value *would not* be evidence of Defendant's bad faith insurance practices to counter Plaintiffs' conjecture to the contrary.  Therefore, discovery of this information is not actually related to the claims at issue and Defendants' objection is sustained."[52]

### 5.    RFP 12: Indemnity Agreements

27.    Plaintiffs demand "[a]ll indemnity agreements in effect at the time of Plaintiffs' claim between Defendant and any person(s) and/or entity(ies) who handled the claim made the basis of the Lawsuit."[53]  Plaintiffs claim that this request is appropriate because "[i]ndemnity agreements are clearly discoverable under Rule 26," which provides for the discovery of "any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment."[54]  But Plaintiffs erroneously conflate the inclusion of a limited exception to traditional discovery rules with a determination that indemnity agreements are generally relevant.  As the Advisory Committee's Note to the 1970 Amendments make clear, the provision for discovery of a certain subset of indemnity or insurance agreements was added in order to

---

[51] Request for Production No. 7, Pls.' Appendix, Dkt. 41-1, Ex. A thereto at 13.

[52] *Dizdar I,* App028-029 (emphasis original).

[53] Request for Production No. 12, Pls.' Appendix, Dkt. 41-1, Ex. A thereto at 13.

[54] Pls.' Br., Dkt. 42, at 14 and n.18 (quoting FED. R. CIV. P. 26(a)(1)(A)(iv)) (misquote corrected).

facilitate settlement, even where such agreements would not be independently relevant. But because this exception is designed to facilitate settlement, it is by its terms expressly limited to agreements which could apply to the satisfaction of a judgment in the case at issue. Plaintiffs' request is not so limited, seeking indemnity agreements in effect at the time of Plaintiffs' claim between State Farm and any person or entity which handled Plaintiffs' claim. Accordingly, Plaintiffs' request is overbroad and seeks irrelevant information, including agreements that only pertain to other claims.

**C.     State Farm's Proposal to Produce in Reasonably Usable Formats Complies with the Federal Rules of Civil Procedure**

28.     Plaintiffs' Production Protocol attempts to impose numerous obligations on State Farm regarding the production of electronically-stored information ("ESI") that exceed the requirements of the Federal Rules of Civil Procedure. Plaintiffs' Production Protocol (a) improperly imposes specific production formats on State Farm; (b) makes the facially overbroad demand that State Farm produce irrelevant metadata; and (c) is not proportional to the needs of this case. State Farm should be allowed to produce in "reasonably usable" formats rather than being saddled with the unnecessary and onerous provisions of Plaintiffs' intrusive Production Protocol.

**1.     Producing Reasonably Usable ESI in Compliance with its Obligations under Fed. R. Civ. P. 34(b)**

29.     Plaintiffs' Production Protocol specifically demands that Defendants produce ESI in native, near-native, or delimited electronic file formats.[55] Federal law, however, does not require that Defendants produce in such formats. Defendants objected to Plaintiffs' defined terms because they are vague and ambiguous, seek irrelevant information, and are not

---

[55] *See* Pls.' Appendix, Dkt. 41-1, Ex. A thereto, at 003-007. Plaintiffs' Production Protocol also improperly seeks to impose requirements on State Farm regarding the production of color, redaction and load files.

proportional to the fair adjudication of the claims at issue.   Defendants also objected[56] to paragraphs 1, 2, 3, 4, 5, 6, 8, 10, 11, 12, 14, and 16 of Plaintiffs' Production Protocol on the grounds that Plaintiffs' instructions exceed the requirements of the law.   Defendants' objections were specific and proper.[57]   Nothing in Rule 34(b) mandates the native format or delimited text file[58] productions that Plaintiffs seek.   Plaintiffs' approach is simply unnecessary, and in many ways unworkable.

     30.    The Federal Rules set forth two production formats for ESI—a form or forms in which it is "ordinarily maintained" _or_ in a "reasonably usable" form or forms.[59]   The Rule 34(b) mechanics and standards for considering the form of production for responsive ESI state that a requesting party "may specify the form or forms in which electronically stored information is to be produced."[60]   The responding party may state an objection to the requested form and "must state the form or forms it intends to use."[61]   The Committee Notes from the 2006 Amendment to Rule 34 explain that:

> If the requesting party is not satisfied with the form stated by the responding party, or if the responding party has objected to the form specified by the requesting party, the parties must meet and confer under Rule 37(a)(2)(B) in an effort to resolve the matter before the requesting party can file a motion to compel.   If [the parties] cannot agree and the court resolves the dispute, the court is not limited to the forms initially chosen by the requesting party, stated by the

---

[56] Rule 34 does not limit the form of the objection that can be made by the responding party.  Defendants objected to Plaintiffs' assumptions that they maintain ESI in a single format, that they maintain all ESI in native format, and that Plaintiffs' demands direct Defendants to undertake efforts that exceed the requirements of Federal Rules of Civil Procedure 26 and 34.

[57] _See gen., Dizdar I,_ App036 (in weighing Plaintiffs' need for metadata (in the form of native and near native format files), against the burdens it would impose on Defendants, the court found that "[t]he information Plaintiffs request from the native format does not fall within the appropriate scope of discovery . . . [and t]herefore _any_ burden incurred by Defendants in producing the information in 'native' or 'near native' format is too much.").

[58] A delimited electronic format is a means of extracting data from a database.  State Farm instead relies on its standard database reports to produce information in a user-friendly format.  _See_ ¶ 38 _infra._

[59] FED. R. CIV. P. 34(b)(2)(E)(ii).

[60] FED. R. CIV. P. 34(b)(1)(C).

[61] FED. R. CIV. P. 34(b)(2)(D).

responding party, or specified in this rule for situations in which there is no court order or party agreement."

If the form of production is not specified by party agreement or court order, the responding party must produce electronically stored information either in a form or forms in which it is ordinarily maintained or in a form or forms that are reasonably usable. [62]

When Rule 34 was amended in 2006, the drafters specifically referenced "reasonably usable" formats to ensure that producing parties had sufficient flexibility regarding the format of production. [63] Thus, Rule 34 clearly allows State Farm to produce ESI in the "reasonably usable" searchable static image formats[64] it offered Plaintiffs. [65] Courts, experts, and common sense confirm that searchable static images (e.g., TIFF and PDF) are an acceptable format for production of documents. Indeed, case law from across the nation not only confirms the widespread adoption, but also the *preference*, for searchable static image production. [66] For

---

[62] U.S. Congress House Doc., 109th Cong., 2d sess., No. 105-109, App055.

[63] Indeed, during the rule-making process the proposed amendment to the rule was modified to ensure that the "ordinarily maintained" language was not used as a cudgel to require "native" file production. *See* App044-045 (amendment of Rule 34(b) to include "reasonably usable form" meant to address, *inter alia*, concerns that "'electronically searchable form' might exert pressure for 'native format' production").

[64] Herein defined to refer to PDF and TIFF static image formats made searchable via delivery of embedded text (PDF) or OCR.

[65] In fact, the Committee Notes to the Rule 34 2006 Amendment observes that the published default [ordinarily maintained or reasonably usable] would *authorize production in a minimally searchable form* even though more easily searched forms might be available at equal or less cost to the responding party. FED. R. CIV. P. 34 advisory committee's note (2006 Amendment). *See also Seabron v. Am. Fam. Mut. Ins. Co.*, 862 F. Supp. 2d 1149, 1160 (D. Colo. 2012) (citing the Comment to the 2006 Amendment to the Federal Rules of Civil Procedure); *S2 Automation LLC v. Micron Tech., Inc.,* No. CIV 11-0884, 2012 WL 3656454, at *19 (D.N.M. Aug. 9, 2012) (same).

[66] *See Race Tires Am., Inc. v. Hoosier Racing Tire Corp.*, 674 F.3d 158, 161 n.2 (3d Cir. 2012) ("Tagged Image File Format ('TIFF') is [a] widely used and supported graphic file format[] for storing bit-mapped images") (quoting the Sedona Conference Glossary); *In re Priceline.com Inc. Sec. Litig.*, 233 F.R.D. 88, 91 (D. Conn. 2005) ("TIFF or PDF format is the most secure format for the production of documents in this case. Given the sheer volume of information flowing from defendants to plaintiffs, the information should be conveyed as numbered images so that no inadvertent alterations are made, or more likely, no accusations of alteration can be made, and so that the information can be easily identified. Exceptions to this directive, however, may be applied for should production of a file in its native format be necessary to view or comprehend the information in the file."); *Wyeth v. Impax Labs., Inc.*, 248 F.R.D. 169, 171 (D. Del. 2006) (ruling that the plaintiff was not required to produce ESI in its native format, where plaintiff produced documents as image files, and defendant failed to demonstrate particularized need for metadata.); *Ojeda-Sanchez v. Bland Farms, LLC*, No. CV608-096, 2009 WL 2365976, at *3 (S.D. Ga.

---

example, in *Seabron*, the court specifically dealt with a dispute over the format of documents to be produced where the requesting party sought a native format production but the responding party objected and offered to produce in searchable TIFF/PDF format.[67]   In holding that production should be made in TIFF format, the court reasoned:

> There are two primary considerations in choosing the form of production: (1) the need for, or probative value of both apparent and metadata; and (2) the extent to which the production of metadata will enhance the functional utility of the electronic information produced and allow the parties to conduct a more cost-effective and efficient review.   These considerations should be weighed against the negative aspects associated with each format.
>
> **In current practice, many parties, local rules and courts have endorsed the use of image production formats, principally the Tagged Image File Format (TIFF) and Adobe Portable Document Format (PDF).**

*Id.*[68]

Reasonably usable forms of ESI provide both parties equal ability to review the probative facts in the matter, taking into consideration the facts of the case and the needs of the parties.[69]

31.   In accordance with Rule 34, Defendants objected to Plaintiffs' requested formats and informed Plaintiffs that Defendants would produce responsive, non-privileged ESI in reasonably usable formats.   The appropriateness of State Farm's decision to produce in searchable static image formats is also supported by the clear conclusions of recognized expert Timothy M. Opsitnick.[70]   Mr. Opsitnick states that production of searchable static image formats

---

July 31, 2009) (noting "general trend" that the party seeking native format show a "particularized need"); *Ky. Speedway, LLC v. Nat'l Ass'n of Stock Car Auto Racing, Inc.*, No. Civ. A. 05-138-WOB, 2006 WL 5097354, at *8 (E.D. Ky. Dec. 18, 2006) (finding a general presumption against production of metadata and holding that its production was not warranted absent a more particularized showing of need).

[67] 862 F. Supp. 2d at 1161-62.

[68] *Id.* (citing The Sedona Principles:   Best Practices Recommendations and Principles for Addressing Electronic Document Production ("The Sedona Principles") Principal 12 Cmt. 12.a and 12.b, at 60 (2d. ed. 2007))[68] (internal citations omitted) (emphasis added).

[69] *See, e.g., Ajaxo Inc. v. Bank of America Tech. and Operations, Inc.*, No. CIV-S-07-0945, 2008 WL 5101451, at *1, n. 1 (E.D. Cal. Dec. 2, 2008) (holding that an objection to a production format request "may be sustained or overruled by a court"); *S2 Automation LLC*, 2012 WL 3656454, at *18 (instructing that "[t]he responding party also is involved in determining the form of production").

[70] Declaration of Timothy M. Opsitnick, App067-69 (¶¶ 25, 27).

is an ordinary, customary, and accepted practice.[71]   Mr. Opsitnick further states that the proposed approach to database productions is in line with his experience and standards set by well-known best practices organizations such as The Sedona Conference.[72]

32.     Common sense also supports State Farm's approach.   Insurance claims litigation such as this involves a relatively small number of documents to address the threshold issue of whether State Farm underpaid Plaintiffs' insurance claim.   State Farm's proposed production format of searchable static images will enable plaintiffs to quickly review the probative facts they require for purposes of determining whether there is evidence that supports their allegations. The production of searchable static image formats will also allow State Farm to easily add Bates numbers to each page, as well as confidentiality legends as appropriate.[73]   Finally, searchable static image formats permit the parties to easily print and use the documents in depositions, in motions and at hearings and trial, without needing to worry about conversions from "native" or "near native" or formats.[74]

33.     Production in searchable static image format meets Defendants' production obligations, searchable static images are highly reliable and functional, and there is neither the need nor a reason to compel State Farm to produce anything else.[75]

## 2.     Plaintiffs' Request for Irrelevant Metadata Is Facially Overbroad.

34.     Plaintiffs demand that Defendants produce metadata associated with native formats is neither necessary nor proportional for purposes of assuring the fair and efficient

---

[71] App075 (¶¶ 36-37).

[72] App069, 074-075 (¶¶ 27 d, 35).

[73] App069 (¶ 26).

[74] Native file productions mandate "work-arounds" to address the fact that Bates stamps and Confidentiality legends cannot be applied using existing standard processes for TIFF and PDF files (e.g., everything from a convention for changing file names, resulting in the need to deliver the original file name in a load file, to establishing a protocol to ensure that each time a native file is printed the appropriate Bates numbers and Confidentiality legends will appear on the hard copy).   (*See* App067 at ¶ 26.)

[75] App071 (¶ 29).

adjudication of her claim.[76]   Metadata generally describes how, when, and by whom ESI is created, accessed, or modified.[77]   Metadata may be "discoverable if it is relevant to the claim or defense of any party and is not privileged."[78]   Here, Plaintiffs' demand for a broad swath of metadata is facially overbroad and irrelevant to the adjudication of this matter.[79]   In *Covad VI,* the requesting party moved the court to order the responding party to produce the ESI for over two thousand documents that were originally produced in paper form because the paper lacked metadata.[80]   Magistrate Judge John Facciola rejected this argument, and found that production of native ESI was not required in order for the information to be reasonably usable because the requesting party "[did] not offer a word as to why it needs native format . . . .   There is no question presented . . . that only the metadata can answer."[81]

35.     Plaintiffs in this case has failed altogether to demonstrate the relevance of the requested metadata and thus is not entitled to its production.[82]   Metadata need not be produced, merely for the convenience of the receiving party.   That is particularly true because much

---

[76] Discovery that is not targeted at illuminating the facts of the case is disproportionate.   *Batson*, 112 F.R.D. at 642.   *See* fn. 10 *supra*.

[77] *See generally*, The Sedona Conference Commentary on Ethics & Metadata, August 2013 at 1, and The Sedona Conference Principles, Best Practices Recommendations & Principles for Addressing Document Production, 2d. Ed., July 2007 at 3, 4.

[78] *Aguilar v. ICE Div. of U.S. Dept. of Homeland Sec.*, 255 F.R.D. 350, 355 (S.D.N.Y. 2008).

[79] *See Covad Communications Co. v. Revonet, Inc.,* 267 F.R.D. 14 (D.D.C. 2010) ("*Covad VI*") (finding that native production was not required where it was not in the interest of judicial expediency).

[80] *Id.* at 20.

[81] *Id.*

[82] *See gen., Dizdar I*, App036 (finding in a very similar case that "[t]he information Plaintiffs request from the native format does not fall within the appropriate scope of discovery.   While there is ostensible a benefit to Plaintiffs in knowing the formulas in an Excel sheet or the list of authors on a document, that information is not relevant at all to the issues at hand, even the extra-contractual issues.   Therefore *any* burden incurred by Defendants in producing the information in 'native' or 'near native' format is too much.").

"metadata lacks evidentiary value because it is not relevant."[83]   Given the nature of the claims, the lack of importance of metadata to the resolution of the case, and the value of the case, the burden that State Farm would incur to produce metadata is not proportional to the benefit, if any, Plaintiffs will receive.   The searchable static image formats produced by State Farm will provide Plaintiffs the necessary information to litigate this case.[84]

### 3.   Plaintiffs' Demand for a Production Protocol is Disproportionate and Unwarranted.

36.   Plaintiffs' unreasonable demands regarding production formats should be overruled.   Proportionality has long been a central tenant of the Federal Rules of Civil Procedure. Even so, the issue of proportionality is the subject of renewed focus in light of the impending amendment to Rule 26.[85]   These pending amendments have brought attention to the fact that the drafters have long envisioned that the principles of proportionality should be used to establish the proper scope of discovery.[86]   In light of that intent, the amendments that are scheduled to be put in effect in December move the proportionality principle back into section 26(b)(1), which is weighed by the following factors:   "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."[87]   Ultimately, Plaintiffs' oppressive production

---

[83] *Aguilar* 255 F.R.D. at 354, (stating that system and application metadata is generally not needed in discovery); *see also Dizdar I*, App034-036 (concluding metadata sought by plaintiffs was irrelevant and a native file production was unwarranted); *see also Covad VI*, 267 F.R.D. at 20 (observing that "[t]here is no question presented by [plaintiffs] that only metadata can answer," and thus plaintiffs were not entitled to the production of metadata.)

[84] *See Dizdar I*, App036.

[85] Emphasis added.

[86] The amendment of Rule 26(b) with regard to proportionality "does not change the existing responsibilities of the court and the parties to consider proportionality."   June 2014 Advisory Committee Report, *supra* note 8, at Appendix B-39.

[87] Note that all factors but "the parties' relative access to relevant information" are currently incorporated into Rule 26(b)(2)(C)(iii).

protocol would violate the principles of proportionality, result in no benefit to Plaintiffs, and increase the burden on State Farm.[88]

37.     First, there are unique burdens associated with the review and production of ESI in "native" format.[89]  For example, State Farm's system of record for claims information is its Enterprise Claims System ("ECS").   This dynamic database includes fielded database information as well as email, correspondence and photos all stored in static image format.[90] State Farm will produce relevant, non-privileged ECS information in the searchable PDF that it creates in the ordinary course of business expressly for litigation purposes.  State Farm provides information to its defense counsel in the same searchable PDFs to prepare its defenses.  As explained by Mr. Opsitnick, "the production of the native version of static image files stored in ECS, would require State Farm to engineer a new process that includes determining upstream sources of the data, validating the upstream sources, determining whether native files of the information still exists, and developing an extraction method for the native versions."[91]  This takes time, resources, and money, creates inefficiencies for the court, and will needlessly slow the resolution of this case.  The practical and substantial burdens and problems with "native" and "near native" production formats "no matter what" cannot be ignored.[92]

38.     Second, Plaintiffs' Production Protocol creates undue burden and expense

---

[88] App075-76.   The *Dizdar I* court came to a similar conclusion, applying the same principle of proportionality found in the Federal Rules of Civil Procedure.  The *Dizdar I* court found, after reviewing evidence similar to that in the record in this case, that State Farm had demonstrated compliance with the request for a native format would impose a "substantial burden," while Plaintiffs failed to demonstrate they would receive any benefit from the native production.  *Dizdar I,* App036.  The court noted that Plaintiffs would gain "all necessary information" from the format proffered by State Farm, and any additional information provided by native format was "not relevant" to the issues at hand.  *Id.*

[89] Principle 12 of The Sedona Principles notes that a "native" file production that includes a substantial volume and variety of file types could become very expensive and burdensome for the requesting party. Principal 12, at 60, available at https://thesedonaconference.org/download-pub/81.

[90] Affidavit of Ian Friedrich, App102 (¶ 8).

[91] App070 (¶ 27 e).

[92] App072 (¶ 31 a-b).

because it requires State Farm to produce all documents in color.[93]   State Farm's collection and maintenance of documents as black and white images is not surprising, as many documents may have color—such as State Farm's iconic red logo—that has no independent value.[94]   Expending extra efforts and costs to capture color regardless of need has no countervailing value, and the absence of color does not affect the "reasonable utility" of the documents for discovery and evidentiary purposes.

39.     Third, Plaintiffs' demand that State Farm use Adobe Acrobat to perform redactions is unreasonable and burdensome.  It is customary for a producing party to choose the redaction tool it will use.[95]   It is not feasible to use Adobe Acrobat on an enterprise level, as the tool is only appropriate for a document by document approach.[96]   Forcing State Farm to use Adobe Acrobat would require the development and validation of new processes and workflows to perform redactions[97] that are plainly disproportionate and altogether unwarranted given that State Farm can use an industry standard redaction tool without incurring any additional costs.

40.     Fourth, Plaintiffs' Production Protocol includes elaborate production specifications regarding Bates numbering and load file delivery formats that fail to take into account State Farm's business process for tracking documents and delivering data in litigation.

41.     Fifth, in order to comply with Plaintiffs' oppressive protocol, State Farm would be forced to re-engineer its processes for retrieving, storing, and producing relevant non-privileged information.[98]   State Farm's reliance on developed and tested mechanisms should not be lightly disregarded because these produce reasonably usable forms of ESI consistent with the requirements of Federal Rule of Civil Procedure 34(b).

---

[93] App073-074 (¶ 31 e).

[94] *Id.*

[95] App073 (¶ 31 d).

[96] *Id.*

[97] *Id.*

[98] App071 (¶¶ 28-30).

42.     Sixth, State Farm will be required to expend additional time, resources, and money if it is required to create new procedures to produce relevant information.[99]   For example State Farm already has a published business procedure that allows it to produce "claim file" information from the ECS system for use in litigation in the standard searchable PDF format.[100] There simply is no alternative procedure that currently exists for generating the type of information that Plaintiffs seek in their discovery requests.[101]   Similarly, the Plaintiffs' proposed Production Protocol would require State Farm to undertake major process changes, re-collections, and new productions.[102]   Another example is State Farm's long-standing business process for routinely retrieving copies of commonly sought documents from a wide variety of business departments and storing them centrally in an archive so they are readily available in a single location when needed.[103]   State Farm designed the archive to avoid the Sisyphean task of endlessly identifying, collecting, and producing the same documents for multiple litigations over and over again.   Plaintiffs' demand that State Farm assume these significant burdens notwithstanding the fact they would not gain any additional usability of the ESI is plainly disproportionate to the matter.[104]

43.     Principle 6 of The Sedona Principles clearly states that "[r]esponding parties are best situated to evaluate the procedures, methodologies, and technologies appropriate for . . . producing their own electronically stored information."[105]   Principle 6 has stood for years and

---

[99] App070 (¶ 27 e).

[100] App103 (¶ 12).

[101] App070 (¶ 27 d).

[102] "[S]ince many databases are intended to be used as information repositories, the system may have been designed solely with the ability for a user to add new data records or update existing records, with no functionality included for the export of records in bulk." *Sedona Database Principles, Comment 2b, The capability of exporting data.*  The ECS falls into this category of databases.

[103] App071 (¶ 28).

[104] App067 (¶ 24).

[105] *The Sedona Principles* at 38.

remains an appropriate reflection of a fundamental presumption underlying state and federal discovery procedures:  a responding party has the right and responsibility to produce relevant information within the boundaries of reasonableness and should be accorded deference in meeting its responsibilities.[106]  State Farm does not merely object to Plaintiffs' demand for native format or delimited electronic format productions of ESI, but has instead offered a proportional alternative, reasonably usable formats.  Ultimately, Plaintiffs' un-tempered demand for particular ESI formats cannot be substituted for State Farm's choice of reasonably usable forms of production.

44.    Here State Farm has produced considerable evidence of the burdens it will sustain under Plaintiffs' proposed Production Protocol.  The great weight of legal authority supports the conclusion that the format requested should not control when the requested information can be produced in another reasonably usable format.  This conclusion is the axiomatic result of the combined principles articulated by Rule 26(b)(2)(C) (proportionality), Rule 34(b) (reasonably usable format) and the overarching Rule 1 ("to secure the just, speedy, and inexpensive determination of every action and proceeding").  This is especially true in this first-party breach of contract dispute.  In short, the Court should set aside Plaintiffs' onerous Production Protocol and allow State Farm to produce documents and ESI in reasonably usable formats as allowed under RULE 34(b).

**D.    Privilege Log**

45.    Plaintiffs argue that State Farm has failed to provide a privilege log and that such failure "results in waiver of the privileges asserted."[107]  However, the privilege log requirement in Rule 26 only applies to information that is "otherwise discoverable."[108]  If "an objection is

---

[106] *See, e.g., Ford Motor Co. v. Edgewood Props., Inc.,* 257 F.R.D. 418, 427 (D.N.J. 2009) ("The Sedona Principles wisely state that it is, in fact, the producing party who is [*sic*] the best position to determine the method by which they will collect documents.").

[107] Pls.' Br., Dkt. 42, at  15.

[108] FED. R. CIV. P. 26(b)(5)(A).

made and that objection has not been ruled on, then the objected to documents are not yet 'otherwise discoverable.'"[109]  Thus, "if a party's pending objections apply to allegedly privileged documents, the party need not log the document until the court rules on its objections."[110]  Accordingly, because State Farm has objected to Plaintiffs' requests on other grounds, it would be premature to require a privilege log.  Once the Court rules on State Farm's objections, State Farm will submit a privilege log if necessary.

## PRAYER

46.     State Farm pray this Honorable Court deny Plaintiffs' Motion to Compel and Motion to Strike irrelevant,  overbroad, and unduly burdensome discovery, and allow State Farm to produce documents and ESI in reasonably usable formats of its designation consistent with Fed. R. Civ. P. 34(b), and for any other and further relief, at law or in equity, to which State Farm shows itself justly entitled.

---

[109] *Am. Soc'y For Prevention of Cruelty To Animals v. Ringling Bros. & Barnum & Bailey Circus*, 233 F.R.D. 209, 212-13 (D.D.C. 2006).

[110] *United States v. Philip Morris Inc.*, 314 F.3d 612, 621 (D.C. Cir. 2003), *abrogated on other grounds by Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100 (2009); *see also Grand River Enterprises Six Nations, Ltd. v. King*, No. 02 CIV.5068(JFK), 2009 WL 63461, at *3 (S.D.N.Y. Jan. 12, 2009) ("Defendants did not have to complete their privilege logs while this objection was pending.").

Respectfully Submitted,


 */s/ W. Neil Rambin*
W. NEIL RAMBIN
Attorney-In-Charge
State Bar No. 16492800
rambindocket@sedgwicklaw.com
1717 Main Street, Suite 5400
Dallas, Texas  75201
(469) 227-8200
(469) 227-8004 (Fax)

OF COUNSEL:

l. KIMBERLY STEELE
State Bar No. 04127600
kimberly.steele@sedgwicklaw.com
SCOTT P. BRINKERHOFF
State Bar No. 24069419
scott.brinkerhoff@sedgwicklaw.com
SEDGWICK LLP
1717 Main Street, Suite 5400
Dallas, Texas  75201
(469) 227-8200
(469) 227-8004 (Fax)

ATTORNEY FOR DEFENDANTS
STATE FARM LLOYDS AND DION
MCKINLEY


## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing document has been served on all counsel of record in accordance with the Federal Rules of Civil Procedure on this 10th day of November 2015.


 */s/ W. Neil Rambin*
W. NEIL RAMBIN